# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:10-CV-01887 NAB<br>) |
| SPRADLING HOME INSPECTIONS, LLC, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff State Farm Fire and Casualty Company ("State Farm") seeks a declaration of rights that it owed no duty to defend or indemnify Defendants Spradling Home Inspections, LLC ("SHI") and Stuart Spradling ("Spradling")[1] for claims related to an underlying lawsuit[2] filed by Defendants Virginia Caputy ("Caputy") and Doug Murray ("Murray"). Each party now moves for summary judgment. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

The question of law before this Court is whether Plaintiff's notice of cancellation sent by certified mail constituted effective notice of cancellation under the policy. The Court finds that the relevant policy language is ambiguous and therefore must be construed in favor of the insured. So construed, the policy required notice of cancellation to be sent by regular mail. Therefore, Plaintiff's notice of cancellation sent by certified mail was ineffective because it did

---

[1] For simplicity, the Court will refer to SHI and Spradling collectively as the "Insured" where warranted.
[2] On October 2, 2009, Murray and Caputy, filed a lawsuit asserting a claim against the Insured for damages relating to a home inspection conducted by Spradling on October 24, 2008.

1

not strictly comply with the policy. As a result, Defendants' motions for summary judgment are granted and Plaintiff's motion for summary judgment must be denied.

## I. BACKGROUND

The Insured filed a Motion for Summary Judgment as to Plaintiff's Complaint and a Motion for Partial Summary Judgment as to Coverage on the Policy for Defendants' Counterclaim (Doc. No. 35), State Farm filed a Cross Motion for Summary Judgment (Doc. No. 38), and Caputy and Murray filed a joint Motion for Summary Judgment (Doc. No. 43)[3]. State Farm filed responses to Defendants' motions (Doc. Nos. 42, 49) and Defendants filed responses to Plaintiff's motion (Doc. Nos. 46, 48). The parties also filed a joint motion to continue trial pending the Court's ruling on the motions and cross-motions for summary judgment (Doc. No. 51).

The parties submitted a joint Stipulation of Facts, and agree that, based upon such stipulated facts, only matters of law remain before the Court for resolution (Doc. No. 34). Since the parties agree that there are no genuine issues of material fact remaining, the Court agrees. *Cf. Jacobson v. Maryland Cas. Co.*, 336 F.2d 72, 75 (8th Cir. 1964) (when determining cross motions for summary judgment, court must continue to determine whether a genuine issue of material fact exists and, if so, must deny motions). Therefore, the issue before this Court is a question of law as to whether State Farm's notice of cancellation sent by certified mail constituted effective notice of cancellation under the policy.

---

[3] Defendants Caputy and Murray incorporated by reference the Insured's motions for full and partial summary judgment in their entirety. *See* Fed. R. Civ. P. 10(c).

**Stipulated Facts**[4]

SHI and Spradling were insured under a liability insurance policy issued by State Farm. The initial effective policy period was December 10, 2008 through December 10, 2009. However, the policy was retroactively effective to December 10, 2003. Both Spradling and SHI would be covered for their potential liability with respect to the underlying lawsuit if the policy was in effect during the relevant period of time.[5] SHI agreed to make quarterly premium payments of $413 rather than pay the entire premium in advance. Those payments were due December 8, 2008, March 10, 2009, June 8, 2009, and September 6, 2009.

On January 16, 2009, State Farm received and accepted the past-due December 2008 payment.

On April 21, 2009, State Farm sent SHI a notice of cancellation by certified mail. This notice was returned to State Farm unclaimed.

On April 29, 2009, State Farm received and accepted the past-due March payment.

On May 11, 2009, State Farm sent an invoice to SHI for the June payment.

On May 12, 2009, State Farm sent a notice by regular mail stating that the Policy would be continued without a lapse in coverage.

Because the certified mail was returned, on May 20, 2009, State Farm asked an insurance agent[6] if the Insureds had moved. The agent advised they had not.

---

[4] The following facts are taken solely from the parties' stipulation of uncontested facts and the attachments submitted with the motions for summary judgment.
[5] The policy listed SHI as the named insured at 1500 South Rustic Road, Columbia, MO 65201 and all relevant correspondence was sent to this address. The parties stipulated that Spradling was an insured under the policy although he is not listed as a named insured therein.
[6] The parties entered no stipulation as to whether the insurance agent was an "agent" of any party under the principles of agency law. The parties agree, however, that the insurance agent's receipt of a notice is distinct from receipt by the Insured under the cancellation provision.

On June 24, 2009, State Farm mailed to SHI a past-due notice, informing SHI that the June payment had not been received. The Insured deny receiving this notice.

On July 9, 2009, State Farm mailed to SHI another past-due notice, informing SHI that the June payment had not been received, remained due, and that if payment was not remitted immediately, State Farm would issue a notice of cancellation. The Insured deny receiving this notice.

On July 17, 2009, State Farm sent via certified mail to SHI a "Notice of Cancellation of Insurance" for the Policy to the address listed in the policy. The "Notice of Cancellation" provides in relevant part:

> Date of Cancellation: August 7, 2009 . . .
>
> We are cancelling this policy. Your insurance will cease on the Date of cancellation shown above.
>
> The reason for cancellation is Nonpayment of Premium. In order for us to consider reinstating this policy, the following amount must be paid in full.
>
> Amount: $826.00.

On August 6, 2009, the cancellation notice was returned to State Farm unclaimed. SHI failed to pay the outstanding June payment on or before August 7, 2009, and never paid the September premium.

On October 2, 2009, Murray and Caputy, as plaintiffs, filed the underlying lawsuit against the Insured in the Circuit Court of Audrain County, Missouri. The suit is for damages relating to a home inspection Spradling conducted on or about October 24, 2008. On October 12, 2009, the Insured were served with a Summons and Petition in the underlying lawsuit. On or about October 26, 2009, SHI submitted a check to State Farm for $413.00.

On October 27, 2009, State Farm's centralized payment center deposited the check.

On October 28, 2009, SHI filed a claim under the Policy relating to the underlying lawsuit. The same day, the underwriting manager informed State Farm's accounting department that coverage under the Policy would not be reinstated and instructed the accounting department to return the funds received. The underwriting manager was aware of SHI's pending claim when the funds were ordered to be returned.

On November 9, 2009, State Farm sent a check to SHI in the amount of $413.00. SHI received and has custody of the State Farm Check but has not negotiated it.

## II. DISCUSSION

**Summary Judgment Standard**

A moving party is entitled to summary judgment if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Summary judgment is frequently used in the context of insurance coverage questions, and the interpretation of an insurance policy is a question of law." *Buehne v. State Farm Mut. Auto. Ins. Co.,* 232 S.W.3d 603, 606 (Mo. App. E.D. 2007).

**Policy Interpretation**

Missouri law controls this diversity case. *See generally Langley v. Allstate Ins. Co.*, 995 F.2d 841, 844 (8th Cir. 1993) (stating federal courts exercising diversity jurisdiction apply state law rules for construing insurance policies). Under Missouri law, "[t]he rules of contract construction govern insurance policies." *Maritz Holdings, Inc., v. Fed. Ins. Co.*, 298 S.W.3d 92, 99 (Mo. App. E.D. 2009). "The key to interpreting an insurance policy is to determine whether the policy's language is ambiguous or unambiguous." *Id.* at 99. "In determining whether the language of an insurance policy is ambiguous, the words will be given the meaning which a

layperson purchasing the policy would ordinarily understand." *Am. States Preferred Ins. Co. v. McKinley*, No. 07-0584CV-W-NKL, 2009 WL 1139122, at *3 (April 28, 2009, W.D. Mo) (citing *Am. Family Mut. Ins. Co. v. Turner*, 824 S.W.2d 19, 21 (Mo. App. E.D. 1991). Ambiguity exists where there is "duplicity, indistinctness, or uncertainty" in the language of the policy or, put another way, where the language is "reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. 2007) (internal citations omitted). In general, definitions in an insurance policy are controlling as to the terms used within the policy. *Bowan ex rel. Bowan v. Gen. Sec. Indemn. Co.* 174 S.W.3d 1, 5 (Mo. App. E.D. 2005). Courts may, however, consider dictionary definitions to determine the ordinary meaning of contract terms. *Foremost Signature Ins. Co. v. Montgomery*, 266 S.W.3d 868, 871 (Mo. App. E.D. 2008). Additionally, we will interpret the policy language consistent with the reasonable expectations, objectives, and intent of the parties. *Chase Resorts Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo. App. E.D. 1993). Ambiguous language is construed against the insurance company, because (1) insurance is intended to furnish protection, not defeat it, and (2) the company, as the drafter of the policy, is in the best position to remove any potential ambiguity. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210-11 (Mo. 1992) (citations omitted). However, the court cannot create an ambiguity in order to distort the language of an unambiguous policy. *Id.* at 210. Further, an ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the associated words. *Acid Piping Tech., Inc. v. Great N. Ins. Co.*, No. 4:04 CV 1667 CDP, 2005 WL 2005 at *3 (E.D. Mo. Nov. 9, 2005) (citations omitted).

**Cancellation Provision**

The "General Conditions" portion of the subject policy provides in relevant part:

These conditions apply to the entire Policy . . .

I. **Cancellation** . . .

1. The First Named Insured may cancel this Policy by mailing or delivering to Us or Our authorized representative advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if We cancel for nonpayment of premium; or

    b. 60 days before the effective date of cancellation if We cancel for any other reason.

We will mail or deliver Our notice to the address stated in Item 1. of the Declarations Page.

Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date. If this Policy is canceled, We will send the First Named Insured any premium refund due and the refund will be pro rata. The cancellation will be effective even if We have not made or offered a refund.

If notice is mailed, proof of mailing will be sufficient proof of notice. . . .

(emphasis in original).

The parties agree that the issue of whether State Farm's notice of cancellation complies with the insurance contract largely centers on the meaning of the words "mail" and "mailing" under the policy. The contract provides that State Farm is permitted to cancel the policy "by mailing or delivering" the cancellation notice and that "if notice is mailed, proof of mailing will be sufficient proof of notice."

Webster's Third New International Dictionary defines the verb "mail" as "to send by mail." *Webster's Third New International Dictionary of the English Language Unabridged* 1361 (Babcock Gove, 3d ed. 2002). The noun "mail" is defined as "the bags of letters and the other postal matter conveyed under public authority from one post office to another." *Id*. at 1362. The term "mails" is defined as: a. "a nation's postal system" or b. "postal matter collectively." *Id*.

One Missouri court held, "[a] letter is properly "mailed" when it is addressed, stamped, and deposited in a proper place for the receipt of the mail." *Senaca Co. v. Ellison*, 208 S.W. 103 (Mo. Ct. App. 1919).

Defendants claim that sending a cancellation notice by certified mail when such notice is not actually received is not "mailing or delivering" as a matter of law. They contend State Farm's cancellation attempt was ineffective because it failed to comply with the terms of the policy. Thus, they argue the Insured maintained coverage under the policy.

The Defendants rely on cases that focus on the underlying rationale of the applicable insurance provisions as they relate to the respective state statutes rather than the actual contract language. This Court does not find that approach necessary given Missouri precedent regarding insurance contract interpretation.

Defendants also argue that State Farm waived the provision requiring the premium to be paid on time by continually accepting premiums after they were due and subsequently reinstating the policy.

State Farm, on the other hand, argues that there was no coverage under the policy for the Insured, either collectively or individually relating to the underlying lawsuit because a cancellation notice sent by a "higher class" of mail that provides a "proof of mailing" is effective cancellation pursuant to R.S. Mo. § § 375.005[7] and 375.011[8].

---

[7] Proof of mailing notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice. R.S. Mo. § 375.005.

[8] Any notice required regarding cancellation, nonrenewal, renewal, or refusal to write, insure or renew any person or property may be sent by a higher class of United States Postal Service mail service than required by law. R.S. Mo. § 375.011.

"[Insurance p]olicy provisions concerning cancellation are valid unless they conflict with an applicable statute." *Stone v. Farm Bureau Ins. Co.*, 203 S.W.3d at 745 n.6 (citation omitted). State Farm asserts that certified mail is a "higher class" of mail, and is therefore specifically allowed by statute. As Defendants properly note, however, certified mail is a "service" rather than a "class" of mail. According to the United States Postal Service Domestic Mail Manual ("DMM"), the only "classes" of mail, in order from highest to lowest, are Express Mail, Priority Mail, First-Class Mail, Parcel Post, and Media Mail and Library Mail. *See* DMM § 100 *et seq.*[9]

Certified mail is an "extra service" that "provides the sender with a mailing receipt and, upon request, electronic verification that an article was delivered or that a delivery attempt was made." *See* DMM 503.3.2.3. Certified mail service, however, is only available for First-Class and Priority Mail classes.[10] An item sent with certified mail service "travels at the speed of the mail class with which they are purchased." *See* DMM 503.3.2.1. Therefore, certified mail could arguably be considered "mail" under both the statute and the policy. However, as the Washington Supreme Court observed, there are practical differences between items sent by regular mail and those sent with certified mail service. *See Certification from U.S. Court of Appeals for the Ninth Circuit v. Kachman et. al.*, 198 P.3d 505, 508 (Wash. 2008). Certified mail requires the recipient's signature for delivery. Therefore, to receive the letter, the recipient is required to be at home or to travel to the post office during business hours. *Id.*

Since certified mail is not a "class" of mail, but instead an "extra service" applied to specific classes of mail, State Farm's argument must fail. The statutory provisions that permit notice of cancellation to be sent by a higher class of mail are not determinative in this instance

---

[9] Citations to the DMM are to the current version of the Manual, *available at* http://pe.usps.com/text/dmm300/dmm300_landing.htm

[10] https://www.usps.com/ship/insurance-and-extra-services.htm/(Last visited May 1, 2012).

because certified mail is not a "class" of mail by USPS standards. Neither statute provides a definition for "mail" or "proof of mailing." Therefore the policy does not conflict with any relevant Missouri statutes and must be interpreted according to its terms.

The Missouri Court of Appeals faced a similar issue in *O'Connor v. State Farm Mut. Auto. Ins. Co.*, 831 S.W.2d 748 (Mo. App. S.D. 1992). The *O'Conner* court interpreted the following cancellation provision:

> How and When We May Cancel. We may cancel *your* policy by written notice, mailed to *your* last known address. The notice shall give the date cancellation is effective.
> It will be mailed to *you* at least:
>
> a. 10 days before the cancellation effective date:
>    (1) if the cancellation is because *you* did not pay the premium; or
>    (2) if the policy has been in force for 59 days or less.
>
> The mailing of it shall be sufficient proof of notice.
>
> b. 30 days before the cancellation effective date if:
>    (1) the cancellation is because of any other reason; and
>    (2) the policy has been in force for more than 59 days.
>
> We will use certified mail.

*Id.* The *O'Connor* court found the two-part insurance cancellation provision ambiguous because it specifically referenced certified mail at the end of provision "b" but failed to specify whether the certified mail condition applied to provision "b" alone or both provisions "a" and "b."

The *O'Connor* court also found that provision "a" was "silent as to how the fact of mailing should be demonstrated" and therefore could imply that sending a cancellation notice by ordinary mail and not certified mail was sufficient proof of notice. *O'Connor*, 831 S.W.2d at 752 ("[n]owhere in the cancellation provision is there any reference to ordinary mail. The only

description of the *type* of mail Defendant will use in sending notice of cancellation is certified mail") (emphasis added). Here, State Farm's cancellation notice is arguably more ambiguous.

The State Farm policy referenced "mailing or delivering" the cancellation notice. However, the policy does not specifically include or exclude certified mail as a means of mailing or delivering the cancellation notice. The absence of any specification could imply that the policy requires regular mail. Conversely, the absence of a specification could imply that any type of "mail" could satisfy the requirement. In the stipulation of facts, Plaintiff consistently stated that they "mailed" past due notices and they also "mailed" the cancellation notices sent via certified mail. Therefore, given the previous discussion of the word "mail," the policy can be interpreted to permit both certified mail and regular mail.

The policy also states, "[i]f notice is mailed, proof of mailing will be sufficient proof of notice." Like *O'Conner*, however, the provision does not specify how proof of mailing should be demonstrated. One way to acquire proof of mailing would be to send the notice via Priority or Express mail and receive Delivery Confirmation after the notice has been sent. Similarly, the certified mail return receipt could be used to show "proof of mailing" in compliance with the policy because the receipt would provide evidence of mailing even if the addressee never confirmed delivery. *See O'Connor*, 831 S.W.2d at 752. Both methods would provide evidence of mailing, even if no receipt were obtained from the addressee confirming delivery. Therefore, the provision is open to more than one interpretation as to how "proof of mailing" should be demonstrated.

The cancellation provision is open to at least two reasonable interpretations as to what constitutes a "mailing" or "proof of mailing." Therefore, the provision is ambiguous and must

be construed against State Farm as the insurer under Missouri law. So construed, the policy required notice by regular mail as a matter of law.

**Policy Cancellation**

It is well-settled under Missouri law that strict compliance with all notice requirements is a prerequisite of cancellation by either party. *Safeco Ins. Co. of Am. V. Stone & Sons, Inc.*, 822 S.W.2d 565, 568 (Mo. App. E.D. 1992); *See Farrar v. Mayabb*, 326 S.W.2d 337, 370 (Mo. App. 1959) ("the Missouri courts have held in an unbroken line of decisions, that strict compliance with all the requirements in regard to notice is a prerequisite to cancellation"); *See, Farmers Mut. Hail Ins. Co. v. Minton,* 279 S.W.2d 523, 526 (Mo. App. 1955); ("the law is firmly settled that, where a policy contains a specific provision for cancellation by either party, it is binding upon the parties and must be strictly complied with in order to terminate the policy.") (internal citations omitted). This is true even when such requirements are unreasonable. *See* the discussion of cases collected on this point at *Safeco*, 822 S.W.2d at 568-69 (held notice to the president who owned 50% of the shares was not sufficient notice when the policy required notice to the named corporate insured). "Requiring strict compliance enhances certainty in insurance matters, benefiting both insurers and insureds." *Id*. The burden of proving cancellation of an insurance policy is on the party asserting it. *Gambill v. Cedar Fork Mut. Aid Soc'y*, 967 S.W.2d 310, 312 (Mo. App. S.D. 1998).

### III. CONCLUSION

Construing the cancellation provision in favor of the insured and against the insurer pursuant to Missouri law, this Court finds that the policy required notice of cancellation by regular mail as a matter of law. State Farm sent its notice of cancellation via certified mail.

Certified mail does not comply with the policy's notice requirements. Under Missouri law, the inconsistency renders State Farm's cancellation ineffective because the parties must strictly adhere to the cancellation provision of the insurance contract in order to terminate the policy.[11]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Spradling and SHI's Motion for Summary Judgment as to Plaintiff's Complaint and Motion for Partial Summary Judgment as to Coverage on the Policy for Defendants' Counterclaim ([Doc. No. 35](Doc. No. 35)) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Virginia Murray and Doug Caputy's joint motion for summary judgment ([Doc. No. 43](Doc. No. 43)) is **GRANTED**

**IT IS FURTHER ORDERED** that Plaintiff State Farm's cross motion for summary judgment ([Doc. No. 48](Doc. No. 48)) is **DENIED**.

Dated this 11th day of June, 2012.

          /s/ Nannette A. Baker
          NANNETTE A. BAKER
          UNITED STATES MAGISTRATE JUDGE

---

[11] Since the Court finds that the notice was not in compliance with the terms of the policy, the Court does not address the issues of waiver and whether certified mail is "mail" as a matter of law.